Slip Op. 17-21

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WWRD U.S., LLC, | |
| Plaintiff, | |
| v. | Before: Mark A. Barnett, Judge |
| UNITED STATES, | Court No. 11-00238 |
| Defendant. | |

OPINION

[The court finds that U.S. Customs and Border Protection correctly classified the subject imports.  Accordingly, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.]

Dated: March 1, 2017

*Daniel J. Gluck*, *Christopher M. Kane*, and *Mariana del Rio Kostenwein*, Simon Gluck & Kane LLP, of New York, NY, for plaintiff.

*Beverly A. Farrell,* Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Amy M. Rubin,* Assistant Director*.*

Barnett, Judge:  Before the court are cross-motions for summary judgment.  Pl.'s Mot. for Summ. J., ECF No. 33-7; Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 33; Def.'s Cross-Mot. for Summ. J. and Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Mem."), ECF No. 43.  Plaintiff WWRD U.S., LLC, ("Plaintiff" or "WWRD") contests the

denial of several protests[1] challenging U.S. Customs and Border Protection's

("Customs") classification of the subject imports[2] according to their constituent materials

and dutiable at rates ranging from three to six percent *ad valorem*.  *See generally*

Summons, ECF No. 1; Compl., ECF No. 15; *see also* Pl.'s Mem. at 3-5.[3]  Plaintiff

contends that the subject imports qualified for duty free treatment pursuant to

subheading 9817.95.01 of the Harmonized Tariff Schedule of the United States

("HTSUS")[4] as "Utilitarian articles of a kind used in the home in the performance of

specific religious or cultural ritual celebrations for religious or cultural holidays, or

religious festive occasions, such as Seder plates, blessing cups, menorahs or kinaras."

---

[1] WWRD contests the denial of protest numbers 4601-11-100133, 4601-11-100149, 4601-11-100150, 4601-11-100152, 4601-11-100153, 4601-11-100363, and 4601-11-100364.  Summons at 4.

[2] The merchandise consists of dinnerware from Plaintiff's "Old Britain Castles" Christmas collections, dinnerware from Plaintiff's "His Majesty" line of Thanksgiving dinnerware, and crystalware from Plaintiff's "12 Days of Christmas" collection.  Pl.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Pl.'s SOF") ¶ 10, ECF No. 33-1; Def.'s Resp. to Pl.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Def.'s Resp. to Pl.'s SOF") ¶ 10, ECF No. 47 (admitting the above as material facts but denying that self-designation by Plaintiff of "Christmas" or "Thanksgiving" merchandise qualifies it for duty free treatment).  Plaintiff has withdrawn its claim concerning "Wedding Heirloom Bowls."  *See* Pl.'s Mem. at 1 n.3; *see also* Compl. ¶¶ 27-37.  For a summary of the subject imports and their respective tariff classifications assigned by Customs, see *infra* p. 7.

[3] Seven entries are at issue: Entry Numbers 31670184352, 31670186480, 31670180012, 31670179998, 31670180004, 31670210579, and 31670219208.  Summons at 4; Compl., Ex. 1.

[4] All citations to the HTSUS are to the 2009 and 2010 versions, which are identical in all relevant respects, as determined by the date of importation of the merchandise.  All items from Plaintiff's "Old Britain Castles" and "His Majesty" collections, and the flutes from Plaintiff's "12 Days of Christmas" collection, entered on several dates in 2009. Decl. of Daniel J. Gluck, Esq. in Supp. of Pl.'s Mot. for Summ. J. ("Gluck Decl."), Ex. G, ECF No. 33-2. The hurricane lamps and punchbowls from Plaintiff's "12 Days of Christmas" collection entered on January 15, 2010.  Gluck Decl., Ex. G.

*See generally* Compl.; *see also* Pl.'s Mem. at 4, 6-7.  Defendant United States

("Defendant" or "the Government") contends that Customs correctly classified the

subject imports.  *See* Def.'s Mem. at 1, 3-4.

There is no genuine issue of material fact regarding the properties of the subject

imports that would preclude summary judgment.  The sole issue before the court is

whether, as a matter of law, the subject imports are properly classified under

subheading 9817.95.01 in addition to the tariff provisions corresponding to their

constituent materials.  For the following reasons, the court finds that Customs properly

classified the subject imports according to their constituent materials and not under

HTSUS 9817.95.01.

BACKGROUND

## I.      Material Facts Not in Dispute

The party moving for summary judgment must show "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."

United States Court of International Trade ("USCIT") Rule 56(a).  Movants should

present material facts as short and concise statements, in numbered paragraphs, and

cite to "particular parts of materials in the record" as support.  USCIT Rule 56(c)(1)(A);

*see also* USCIT Rule 56.3(a)("factual positions described in Rule 56(c)(1)(A) must be

annexed to the motion in a separate, short and concise statement, in numbered

paragraphs").  In responsive papers, the nonmovant "must include correspondingly

numbered paragraphs responding to the numbered paragraphs in the statement of the

movant."  USCIT Rule 56.3(b).  Parties filed cross motions for summary judgment and

submitted separate statements of undisputed material facts with their respective

motions and responses to the opposing party's statements.   *See* Pl.'s SOF; Def.'s Resp.

to Pl.'s SOF; Def.'s Statement of Facts as to Which There Are No Genuine Issues to be

Tried ("Def.'s SOF"), ECF No. 43-2; Pl.'s Resp. to Def.'s Statement of Material Facts as

to Which No Genuine Issue Exists ("Pl.'s Resp. to Def.'s SOF"), ECF No. 44-2.  Upon

review of the parties' facts (and supporting exhibits), the court finds the following

undisputed and material facts.[5]

Plaintiff WWRD is the importer of record.  Pl.'s SOF ¶ 2; Def.'s Resp. to Pl.'s

SOF ¶ 2.  The subject imports comprise decorative ceramic plates and mugs from

WWRD's "Old Britain Castles" dinnerware collections; decorative ceramic plates and

gravy boats from WWRD's "His Majesty" dinnerware collection; and crystal flutes, punch

bowls, and footed hurricane lamps from WWRD's "12 Days of Christmas" collection.[6]

Def.'s SOF ¶ 1; Pl.'s Resp. to Def.'s SOF ¶ 1; *see also* Pl.'s Mem., Ex.'s A-E (physical

samples of plates from Plaintiff's "Old Britain Castles" and "His Majesty" lines of

dinnerware, and flutes from Plaintiff's "12 Days of Christmas" line of crystalware); Gluck

Decl. ¶¶ 2-6 (verification of manual filing of exhibits).  The "Old Britain Castles"

Christmas plates and mugs and the "12 Days of Christmas" crystal flutes and punch

---

[5] Citations are provided to the relevant paragraph number of the undisputed facts and response; internal citations generally have been omitted.

[6] In their briefs, both parties refer to the plates as ceramic without citing support in the record.  Pl.'s Mem. at 1, 11; Def.'s Mem. at 3.  While the underlying classification of the subject merchandise according to its constituent material is not in dispute, the court reviewed the physical samples provided and confirmed that the plates are ceramic. Pl.'s Mem., Ex.'s A-E (physical samples of plates from Plaintiff's "Old Britain Castles" and "His Majesty" lines of dinnerware).

bowls are "designed to be used to serve food and beverages at Christmas . . . dinner." Pl.'s SOF ¶ 14; Def.'s Resp. to Pl.'s SOF ¶ 14.[7]

The "Old Britain Castles Pink Christmas" plates and mugs feature a Christmas tree motif.  Aff. of Michael Craig ("Craig Aff.") ¶¶ 5-8, ECF No. 33-3;[8] Craig Aff., Ex's. 1-4, ECF No. 33-4; Pl.'s Mem., Ex.'s A, B.  The plates measure 22cm and 27cm in diameter.  Craig Aff. ¶¶ 5-6; Gluck Decl., Ex. G (summary of subject merchandise). Mugs in the "Old Britain Castles Christmas" collection feature a Christmas tree and Santa Claus motif.  Craig Aff. ¶ 9, Ex. 5.

The plates and gravy boat in Plaintiff's "His Majesty" collection feature a "regal tom turkey" surrounded by "nuts, fruits, berries, and vegetables."  Craig Aff. ¶¶ 10-14, Ex.'s 6-10; Pl.'s Mem., Ex. C.  The plates measure 20cm in diameter.  Craig Aff. ¶¶ 10-13; Gluck Decl., Ex. G.

The "Eileen" flute in WWRD's "12 Days of Christmas" collection features "the figure of a lady surrounded by hollies and berries symbolizing the 'Nine Ladies Dancing' portion of the 'Twelve Days of Christmas' song lyrics."  Craig Aff. ¶ 15, Ex. 11; Pl.'s Mem., Ex. D.  The "Glenmore" flute features "the figure of a lord surrounded by hollies

---

[7] Defendant denies the "His Majesty" plates and gravy boats, which feature a turkey motif, were designed to be used as part of Thanksgiving dinner. Def.'s Resp. to Pl.'s SOF ¶ 14.  Defendant neither admits nor denies Plaintiff's assertion that the "12 Days of Christmas" hurricane lamps "provide light and ambiance to the holiday dinner table." *See id.*; Pl.'s SOF ¶ 14.

[8] The Craig Affidavit contains duplicate paragraphs numbered three through eight. *See* Craig. Aff., pp.1-2 (page one contains paragraphs numbered one to eight, and a subsequent paragraph numbered three; page two continues with paragraphs numbered four onwards).  The paragraphs cited to in connection with the court's description of the subject merchandise are those numbered paragraphs beginning on page 2.

and berries symbolizing the 'Ten Lords A-Leaping' portion of the 'Twelve Days of Christmas' song lyrics."  Craig Aff. ¶ 16, Ex. 12; Pl.'s Mem., Ex. E.  The footed hurricane lamp and punchbowl depict various figures from the "Twelve Days of Christmas" song. Craig Aff. ¶¶ 17, 18, Ex.'s 13, 14.

## II.    Procedural History

As noted above, this case involves seven entries of merchandise.  Summons at 4; Compl., Ex. 1.  The subject imports entered at the Ports of Newark, New Jersey, and New York, New York, on several dates in 2009 and 2010, and Customs liquidated the entries between August 20, 2010, and January 3, 2011.  Summons at 4; Compl., Ex. 1; *see also* Entry Documents in Court File.[9]  The following table summarizes the subject imports and their respective tariff provisions assigned by Customs based upon the items' constituent materials:

---

[9] See *supra* note 4 regarding which products entered in 2009 and 2010.

| Subject Import | Customs' Classification | Dutiable Rate (percentage *ad valorem*) |
|---|---|---|
| Old Britain Castles - Pink Christmas (Pink and Green) plates and mugs | 6912.00.3910[10] | 4.5 |
| Old Britain Castles - Pink Christmas (Pink) plates and mugs | 6912.00.3910 | 4.5 |
| Old Britain Castles - Christmas coffee mugs | 6912.00.3910 | 4.5 |
| His Majesty dinnerware plates | 6912.00.3910 | 4.5 |
| His Majesty gravy boats | 6912.00.3950 | 4.5 |
| 12 Days of Christmas crystal flutes | 7013.22.5000[11] | 3.0 |
| 12 Days of Christmas punch bowls | 7013.41.5000[12] | 6.0 |
| 12 Days of Christmas footed hurricane lamps | 9405.50.4000[13] | 6.0 |

*See* Pl.'s SOF ¶¶ 19-23; Def.'s Resp. to Pl.'s SOF ¶¶ 19-23; Def.'s SOF ¶¶ 6(b)-10;

Pl.'s Resp. to Def.'s SOF ¶¶ 6(b)-10.[14]  WWRD timely and properly protested, which

protests Customs denied.  Summons at 1; Compl. ¶ 4; Answer ¶ 4, ECF No. 19; Def.'s

---

[10] Subheading 6912.00.39 covers "Ceramic tableware, kitchenware, other household articles and toilet articles, other than of porcelain or china: Tableware and kitchenware: Other: Other: Available in specified sets: In any pattern for which the aggregate value of the articles listed in additional U.S. note 6(b) of this chapter is over $38…4.5 [percent]."

[11] Subheading 7013.22.50 covers: "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purpose (other than that of heading 7010 or 7018): Stemware drinking glasses, other than of glass-ceramics: Of lead crystal: Valued over $5 each…3 [percent]."

[12] Subheading 7013.41.50 covers: "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purpose (other than that of heading 7010 or 7018): Glassware of a kind used for table (other than drinking glasses) or kitchen purposes other than that of glass-ceramics: Of lead crystal: Valued over $5 each…6 [percent]."

[13] Subheading 9405.50.40 covers: "Lamps and light fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: Non-electrical lamps and lighting fittings: Other…6 [percent]."

[14] Defendant's statement of facts contains two paragraphs numbered six.  *See* Def.'s SOF at 1-2.  Plaintiff's response duplicates Defendant's numbering.  *See* Pl.'s Resp. to Def.'s SOF at 2-3, 4.  For ease of identification, the court cites to the second paragraph numbered six as paragraph 6(b).

SOF ¶¶ 3-4; Pl.'s Resp. to Def.'s SOF ¶¶ 3-4.  WWRD challenges the denial of its

protests.  Parties have fully briefed the issues.  The court now rules on the cross-

motions for summary judgment.

### JURISDICTION AND STANDARD OF REVIEW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

Jurisdiction is uncontroverted in this case.  Compl. ¶ 2; Answer ¶ 2; Pl.'s SOF ¶ 1; Def.'s

Resp. to Pl.'s SOF ¶ 1.

The Court may grant summary judgment when "there is no genuine issue as to

any material fact," and "the moving party is entitled to judgment as a matter of law."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986); USCIT Rule 56(a).[15]  The court's

review of a classification decision involves two steps.  First, it must determine the

meaning of the relevant tariff provisions, which is a question of law.  *See Bausch &*

*Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citation omitted).

Second, it must determine whether the merchandise at issue falls within a particular

tariff provision, as construed, which is a question of fact.  *Id.*  (citation omitted).  When

no factual dispute exists regarding the merchandise, resolution of the classification turns

solely on the first step.  *See id.* at 1365–66; *see also Carl Zeiss, Inc. v. United States*,

195 F.3d 1375, 1378 (Fed. Cir. 1999).

---

[15] When parties have filed cross-motions for summary judgment, the court generally
must evaluate each party's motion on its own merits, drawing all reasonable inferences
against the party whose motion is under consideration.  *JVC Co. of America, Div. of US
JVC Corp. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000); *Specialty
Commodities Inc. v. United States*, 40 CIT ___, ___, 19  F. Supp. 3d 1277, 1282 (2016).
Here, the material facts are undisputed.

The court reviews classification cases *de novo*. *See* 28 U.S.C. § 2640(a). While

the court accords deference to Customs classification rulings relative to their "power to

persuade," *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v.

Swift & Co.*, 323 U.S. 134, 140 (1944)), it has "an independent responsibility to decide

the legal issue of the proper meaning and scope of HTSUS terms," *Jedwards Int'l, Inc.

v. United States*, 40 CIT ___, ___, 161 F. Supp. 3d 1354, 1357 (2016) (quoting *Warner-

Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005)).[16]  It is "the court's

duty to find the correct result, by whatever procedure is best suited to the case at hand."

*Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

DISCUSSION

I.      **Legal Framework**

The General Rules of Interpretation ("GRIs") provide the analytical framework for

the court's classification of goods.  *See N. Am. Processing Co. v. United States,* 236

F.3d 695, 698 (Fed. Cir. 2001).  "The HTSUS is designed so that most classification

questions can be answered by GRI 1."  *Telebrands Corp. v. United States,* 36 CIT ___,

___, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd* 522 Fed. App'x 915 (Fed. Cir. 2013).

GRI 1 states that, "for legal purposes, classification shall be determined according to the

terms of the headings and any [relevant] section or chapter notes."  GRI 1, HTSUS.

The court considers chapter and section notes of the HTSUS in resolving classification

---

[16] According to Plaintiff, Customs issued a summary denial "without detailed analysis"
and parties have not otherwise provided the court with a Customs ruling.  *See* Pl.'s
Mem. of Law in Resp. to Def.'s Cross-Mot. for Summ. J. and Pl.'s Reply in Further
Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Resp.") at 3, ECF No. 44.

disputes because they are statutory law, not interpretive rules.  *See Arko Foods Intern.,*

*Inc. v. United States*, 654 F.3d 1361, 1364 (Fed. Cir. 2011) (citations omitted); *see also*

*Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 929 (Fed. Cir. 2003) (chapter

and section notes are binding on the court).

"Absent contrary legislative intent, HTSUS terms are to be 'construed [according]

to their common and popular meaning.'"  *Baxter Healthcare Corp. v. United States,* 182

F.3d 1333, 1337 (Fed. Cir. 1999) (quoting *Marubeni Am. Corp. v. United States,* 35 F.3d

530, 533 (Fed. Cir. 1994)).  Courts may rely upon their own understanding of terms or

consult dictionaries, encyclopedias, scientific authorities, and other reliable information.

*Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed. Cir. 1988); *BASF*

*Corp. v. United States,* 35 CIT ___, ___, 798 F. Supp. 2d 1353, 1357 (2011).[17]

## II.     Overview of Plaintiff's Proposed Classification

The relevant chapter is Chapter 98, titled "Special Classification Provisions."

Plaintiff contends the subject imports are properly classified under subheading

9817.95.01.  *See generally* Pl.'s Mem.; Pl.'s Resp.  Subheading 9817.95.01 covers:

> 9817.95      Articles classifiable in subheadings 3924.10, 3926.90,
>                    6307.90, 6911.10, 6912.00, 7013.22, 7013.28, 7013.41,
>                    7013.49, 9405.20, 9405.40 or 9405.50, the foregoing
>                    meeting the descriptions set forth below:
>                    9817.95.01   Utilitarian articles of a kind used in the home in
>                                        the performance of specific religious or cultural

---

[17] For additional guidance on the scope and meaning of tariff headings and chapter and section notes, the court also may consider the Explanatory Notes ("EN") to the Harmonized Commodity Description and Coding System, developed by the World Customs Organization.  *See Deckers Outdoor Corp. v. United States,* 714 F.3d 1363, 1367 n. 1 (Fed. Cir. 2013).  However, Chapter 98 and its associated subheadings do not have ENs.

> ritual celebrations for religious or cultural
> holidays, or religious festive occasions, such
> as Seder plates, blessing cups, menorahs or
> kinaras. . . . . . . . . . . . . . . . . . . . . . . . . . . .Free.

Subheading 9817.95.01 went into effect on February 3, 2007.  *See Michael*

*Simon Design, Inc. v. United States*, 609 F.3d 1335, 1337, 1340-44 (Fed. Cir. 2010)

(discussing the President's authority to modify tariff rates by proclamation in response to

a challenge to Proclamation 8097, which, *inter alia*, adopted the International Trade

Commission's ("ITC") recommended amendment to the HTSUS establishing

subheading 9817.95.01); *see also Proclamation 8097*, 72 Fed. Reg. 453 (Jan. 4, 2007)

("Proclamation 8097").  Before then, utilitarian items associated with a holiday or festive

occasion were classified under heading 9505, HTSUS, which covers "Festive, carnival

or other entertainment articles," as interpreted by the Federal Circuit in a line of cases

beginning with *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir.

1997).  *See Michael Simon Design, Inc. v. United States*, 33 CIT 1003, 1004-07, 637 F.

Supp. 2d 1218, 1220-23, (2009), *aff'd* 609 F.3d 1335 (Fed. Cir. 2010).

In 2007, pursuant to Proclamation 8097, Chapter 95[18] was amended to add Note

1(v), which excludes from Chapter 95 "Tableware, kitchenware, toilet articles, carpets

and other textile floor coverings, apparel, bed linen, table linen, toilet linen, kitchen linen

and similar articles having a utilitarian function (classified according to their constituent

material)."  *See* Note 1(v) to Chapter 95; *see also Michael Simon Design*, 33 CIT at

---

[18] Chapter 95 covers "Toys, games and sports equipment; parts and accessories
thereof."

1006-07, 637 F. Supp. 2d at 1222-23; Proclamation 8097.  A footnote to Note 1(v)

refers readers to subheading 9817.95.  *See* Note 1(v) to Chapter 95.  According to

Plaintiff, subheading 9817.95.01 was added so that certain items remained eligible for

duty free treatment in compliance with domestic obligations pursuant to the International

Convention on the Harmonized Commodity Description and Coding System

("Convention").  *See* Pl.'s Mem. at 10.[19]

Subheading 9817.95 contains two relevant provisions: (1) subheading

9817.95.01, defined above; and (2) subheading 9817.95.05, which covers "Utilitarian

items in the form of a three-dimensional representation of a symbol or motif clearly

associated with a specific holiday in the United States."  Although Plaintiff originally

claimed classification under both subheadings (as alternatives), Plaintiff now limits its

argument to subheading 9817.95.01.  *See* Compl. ¶¶ 24-25, 34-35; Pl.'s Mem. at 10-20.

---

[19] The HTSUS constitutes domestic implementation of the Convention.  *See Faus Group, Inc. v. United States*, 28 CIT 1879, 1881 n.5, 358 F. Supp. 2d 1244, 1248 n.5 (2004) (citing the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, § 1217, 102 Stat. 1107, 1147 (1988)).  ITC-proposed modifications to the HTSUS generally must "ensure substantial rate neutrality," i.e., no significant changes in duties, unless the changes are "consequent to, or necessitated by, nomenclature modifications that are recommended under [§ 3005]."  19 U.S.C. § 3005(d)(1)(C), (d)(2) (2012); *see also Michael Simon Design*, 33 CIT at 1005-06 & n.5, 637 F. Supp. 2d at 1221 & n.5.  While substantial rate neutrality is to guide the ITC's exercise of its responsibilities in proposing modifications to the HTSUS pursuant to 19 U.S.C. § 3005(d)(1)(C), it is not an interpretive rule that guides or constrains the court in determining the correct classification of a good after that modification has been proclaimed by the President.  *See infra* pp. 20-21.

### III.    The Subject Imports Are Not Classifiable Under Subheading 9817.95.01

### 1.  Parties' Contentions

In order to be classifiable under subheading 9817.95.01, the subject imports

must be: (1) classifiable in subheading 3924.10, 3926.90, 6307.90, 6911.10, 6912.00,

7013.22, 7013.28, 7013.41, 7013.49, 9405.20, 9405.40 or 9405.50; (2) utilitarian; (3) of

a kind used in the home; and (4) used in the performance of specific religious or cultural

ritual celebrations for religious or cultural holidays, or religious festive occasions.

Parties agree the subject imports meet the first three requirements;[20] however, Parties

dispute whether the subject imports meet the fourth requirement.  *See* Pl.'s Mem. at 11-

16; Pl.'s Resp. at 4; Def.'s Mem. at 9; Def.'s Reply at 5.

Parties disagree about the scope of the term "ritual," and whether the dinner

meals on Thanksgiving and Christmas, during which Plaintiff contends the merchandise

is used, constitute "specific cultural ritual celebrations."  *See* Pl.'s Mem. at 14-15; Def.'s

Mem. at 11-14.  Plaintiff asserts that Thanksgiving and Christmas dinners "are specific

cultural ritual celebrations."  Pl.'s Mem. at 15.  Defendant counters that "there is nothing

---

[20] Parties do not dispute that, for purposes of classifying the merchandise in question, Thanksgiving and Christmas are "cultural holidays."  *See* Pl.'s Resp. at 5; Def.'s Reply Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. and in Further Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Reply") at 3, ECF No. 48 (arguing the merchandise is not classifiable under subheading 9817.95.01 because it is not "used in the performance of a ritual celebration," not because Thanksgiving and Christmas are not cultural holidays); Def.'s Reply at 6 (referring to Thanksgiving and Christmas as holidays).  While Christmas also is a religious holiday, Plaintiff does not assert that the merchandise in question is used in connection with a specific religious ritual celebration.  *See* Pl.'s Mem. at 1, 14-16.  Moreover, the decorations on the goods are secular in nature – Christmas trees, Santa Claus, and depictions tied to the song "The Twelve Days of Christmas."  *See, e.g.*, Craig Aff. ¶¶ 5-18.

ritualistic about Christmas or Thanksgiving dinner"; rather, they are "opportunities for

friends and families to get together and share a meal."  Def.'s Mem. at 13, 14.

Parties also disagree about the test the court should use to determine whether

the subject imports are "*of a kind . . . used in the performance of specific . . . cultural

ritual celebrations.*"[21]  However, because resolution of the first issue disposes of this

case, the court does not reach this second issue.

## 2.  The Scope of "Specific Cultural Ritual Celebrations"

As discussed above, classification is generally determined according to chapter

headings and relevant section or chapter notes.  GRI 1, HTSUS.  Section XXII[22] does

---

[21] Plaintiff contends that subheading 9817.95.01 is a "use provision" requiring application of Additional U.S. Interpretive Rule ("AUSIR") 1(a). Pl.'s Mem. at 16. Pursuant to AUSIR 1(a),

> [A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported articles belong, and the controlling use is the principal use[.]

Thus, Plaintiff contends, the court must apply the factors stated in *United States v. Carborundum Co.*, 63 C.C.P.A. 98 (1976), to determine whether the subject imports are used in the performance of a specific cultural ritual celebration.  Pl.'s Mem. at 17-20; Pl.'s Resp. at 14-15.  Defendant contends that classification under subheading 9817.95.01 requires the merchandise to meet the "Federal Circuit Festive Article Test," developed pursuant to the line of cases interpreting heading 9505, beginning with *Midwest of Cannon Falls, Inc.*  Def.'s Mem. at 7-11 (citing *Midwest of Cannon Falls*, 122 F.3d at 1423, *Park B. Smith, Ltd.*, 347 F.3d at 922, and *Michael Simon Design*, 501 F.3d at 1303, as collectively forming the "Federal Circuit Festive Article Test"); Def.'s Reply at 6-8.  Defendant also relies on the exemplars in subheading 9817.95.01 to argue that items classifiable under that provision must be "integral" to the ritual cultural celebration.  Def.'s Mem. at 13 (merchandise must be "necessary and integral" to the ritual); Def.'s Reply at 9 (merchandise "must be clearly identifiable with and integral to performing the ritual").

[22] Section XXII includes "Special Classification Provisions; Temporary Legislation; Temporary Modifications Established Pursuant to Trade Legislation; Additional Import

not contain any section notes, and the only allocable chapter note does not inform the meaning of the relevant tariff terms.[23]   Chapter 98 does not contain four-digit headings, but rather, is a collection of eight- or ten-digit subheadings covering a diverse array of articles.  Accordingly, the court considers the common meaning of the phrase "specific … cultural ritual celebration" and, in particular, the term "ritual."  *See Baxter Healthcare Corp.*, 182 F.3d at 1337.

Plaintiff offers several definitions of the term "ritual."  Plaintiff points to *Merriam Webster's Collegiate Dictionary*, which defines "ritual" as "a customarily repeated often formal act or series of acts."  Pl.'s Mem. at 15 (citing *Merriam Webster's Collegiate Dictionary* 1011 (10th Ed.)).  Plaintiff also cites various books and journal articles.  First, Plaintiff relies on a 1973 article, "Symbols in African Ritual," which defines "ritual" as "a stereotyped sequence of activities involving gestures, words, and objects, performed in [sic] sequestered place."  Pl.'s Mem. at 14 (citing Victor W. Turner, Symbols in African Ritual at 123, in Annual Editions: Readings in Anthropology '75-'76 (1975)); *see also* Gluck Decl., Ex. I (copy of the article).  Next, Plaintiff offers that a "ritual" is "a type of expressive, symbolic, activity constructed of multiple behaviors that occur in a fixed, episodic sequence, and that tend to be repeated over time.  Ritual behavior is dramatically scripted and acted out and is performed with formality, seriousness, and

---

Restrictions Established Pursuant to Section 22 of the Agricultural Adjustment Act, As Amended."

[23] Pursuant to Note 1 to Chapter 98, subheading 9817.95 "[is] not subject to the rule of relative specificity in [GRI] 3(a)."  There are no subchapter notes applicable to subheading 9817.95.01.

inner intensity."  Pl.'s Mem. at 14-15 (citing Dennis W. Rook, *The Ritual Dimension of Consumer Behavior*, 12 J. of Consumer Behavior 251, 252 (1985)).  Plaintiff also proposes that "rituals" are "characterized by formalism, traditionalism, invariance, rule-governance, sacral symbolism, and performance."  Pl.'s Mem. at 15 (citing Catherine Bell, Ritual: Perspective and Dimensions 138-69 (1997)).

Plaintiff seeks to establish that "Christmas and Thanksgiving dinners are specific cultural ritual celebrations, involving the same motifs, themes and celebrations each year."  Pl.'s Mem. at 15.  Plaintiff contends that Christmas is a "vigorous ritual occasion . . . prescrib[ing] the consumption of special food and drink at ceremonious occasions."  Pl.'s Mem. at 15 (quoting Rook, *supra*).  Plaintiff asserts that "[p]reparing or attending Christmas dinner has been recognized as an unwritten rule," Pl.'s Mem. at 15 (citing Theodore Caplow, *Rule Enforcement Without Visible Means: Christmas Gift Giving in Middletown*, 89 Am. J. of Sociology 1306, 1312-13 (1984)), and that Thanksgiving and Christmas dinners "often involve festive table settings."  Pl.'s Mem. at 15 (citing *A Thanksgiving Tablescape with a View* (Sept. 28, 2016, 1:02 PM), http://betweennapsontheporch.net/thanksgiving-tablescape-with-johnson-brothers-his-majesty-dishware/); *see also* Gluck Decl., Ex. H (copy of the webpage).

Though proposing similar definitions of the term "ritual," Defendant argues that the dinners associated with Thanksgiving and Christmas lack "formal actions and words that are repeated every year in the same fashion by everyone who celebrates those events," and instead are opportunities to share a meal.  Def.'s Mem. at 13.  Defendant points to *Webster's New Collegiate Dictionary*, which defines "ritual" as (1) "the

established form for a ceremony," such as "the order of words prescribed for a religious

ceremony," and (2) "a ritual observance," such as "a system of rites," "a ceremonial act

or action," or "any formal and customarily repeated act or series of acts."  Def.'s Mem. at

11-12 (quoting *Webster's New Collegiate Dictionary* 992 (1979)).  Defendant also relies

on an online dictionary defining "ritual" as "[a] ceremony in which the actions and

wording follow a prescribed form and order."  Def.'s Mem. at 12 (quoting *Ritual*,

http://www.thefreedictionary.com/ritual).

    Plaintiff responds that Defendant has interpreted the term "ritual" too narrowly,

and the sources Plaintiff supplied "define the term[] in less religious and more general

terms."  Pl.'s Resp. at 12.  Plaintiff cites to an online dictionary in support of its argument

that "customary, traditional, annual dinners" are "central and important" to Thanksgiving

and Christmas.  Pl.'s Resp. at 12 (citing *Ritual*, https://www.vocabulary.

com/dictionary/ritual); *see also* Decl. of Daniel J. Gluck, Esq. in Supp. of Pl.'s Resp. to

Def.'s Cross-Mot. for Summ. J. and Pl.'s Reply in Further Supp. of Pl.'s Mot. for Summ

J. ("Gluck Suppl. Decl."), Ex. M (copy of webpage containing the dictionary definition),

ECF No. 44-1.  That definition suggests an interpretation that roughly equates "ritual"

with "routine" or "tradition."  *See* Gluck Suppl. Decl., Ex. M (defining "ritual" as "a

ceremony or action performed in a customary way," and providing the example of a

family "hav[ing] a Saturday night ritual of eating a big spaghetti dinner and then taking a

long walk to the ice cream shop") (emphasis omitted).  It further suggests that the term

"ritual" can describe "any time-honored tradition, like the Superbowl, or Mardi Gras, or

Sunday morning pancake breakfast."  Gluck Suppl. Decl., Ex. M

There is little question that Thanksgiving and Christmas are both cultural holidays and the dinners associated with them are widely-observed cultural celebrations performed on or around those holidays.  That, however, is not the question before the court.  The subheading in question requires the performance of a "<u>specific</u> … cultural <u>ritual</u> celebration."  As discussed by both parties, rituals generally encompass specific scripted acts or series of acts that are customarily performed in an often formal or solemn manner.  The plain language of subheading 9817.95.01 does not support broadly interpreting the term "ritual" as any event that occurs on a regular basis.

Thanksgiving and Christmas -- like other cultural or religious holidays -- recur annually, as do the celebrations associated with them.  However, if subheading 9817.95.01 was intended to cover utilitarian items used in the home during religious or cultural celebrations, whenever they routinely occur, and whatever they might entail, the term "ritual" could have been omitted altogether.  It is well settled "that a statute must, if possible, be construed in such a fashion that every word has some operative effect." *United States v. Nordic Village Inc*., 503 U.S. 30, 36 (1992); *see also China Diesel Imports, Inc. v. United States*, 18 CIT 1086, 1090, 870 F. Supp. 347, 351 (1994) ("Courts are required to give effect to each word of a statute, whenever possible.").  The term "ritual" only serves a purpose in this subheading when interpreted to mean the performance of prescribed cultural or religious acts.

Indeed, subheading 9817.95.01 speaks of "the performance of *specific* . . . cultural ritual celebrations."   In support of its argument that Thanksgiving and Christmas dinners involve ritualistic performance, Plaintiff offers nothing more than the highly *non-*

*specific* "consumption of special food and drink," and, perhaps, the use of "festive table settings."  *See* Pl.'s Mem. at 15 (citations omitted).  Plaintiff's examples do not persuade that Thanksgiving and Christmas dinners are "<u>specific</u> cultural <u>ritual</u> celebrations."

The exemplars included in the subheading support this interpretation. Subheading 9817.95.01 covers "[u]tilitarian articles of a kind used in the home in the performance of specific religious or cultural ritual celebrations . . ., *such as Seder plates, blessing cups, menorahs or kinaras*."  In classification cases, the statutory construction rule of *ejusdem generis* ("of the same kind") requires that the subject imports "possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms."  *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994) (citation omitted).  As Defendant explains, a Seder plate is used during Passover to hold six symbolic foods, a menorah is a candelabrum used during Hanukkah, both Jewish celebrations, and a kinara is a candelabrum used during Kwanzaa, which is a "secular seven-day festival in celebration of the African heritage of African Americans."  Def.'s Mem. at 12-13 (citations omitted).[24]  Unlike the subject imports, which are merely decorative items used to serve food and beverages or provide lighting, *see* Def.'s SOF ¶ 1; Pl.'s Resp. to Def.'s SOF ¶ 1; Pl.'s Mem., Ex.'s A-

---

[24] Blessing cups appear to refer to the four cups of wine that participants consume during Passover Seder, each of which corresponds to a significant phrase in the Torah, *see* Samuel J. Levine, *Second Annual Holocaust Remembrance Lecture at Washington University*[:] *Jewish Law From Out of the Depths: Tragic Choices in the Holocaust*, 10 Wash. U. Global Stud. L. Rev. 133, 139-40 (2011), and/or the cup that is used to hold wine during Eucharistic prayer, *see* Albert S. Thayer, *Sacramental Features of Ancient and Modern Law*, 14 Harv. L. Rev. 509, 516-517 (1901).

E, the exemplars play a particular role within the sequence of activities that form the

respective religious or cultural ritual celebrations, *see* Def.'s Mem. at 12-13.[25]  Although

the exemplars do not necessarily indicate the limits of subheading 9817.95.01, they are

consistent with, and, therefore, support, the court's consideration of "ritual" as

determinative here.

One final point merits attention.  Plaintiff suggests that classifying the

merchandise according to its constituent materials and not under subheading

9817.95.01 results in a "breech [sic] [of the Government's] treaty obligations under the

[Convention]" because they would no longer be eligible for duty free treatment.  Pl.'s

Mem. at 10.  Assuming *arguendo* the merchandise would have qualified for duty free

treatment prior to February 2007, the requirement for substantial rate neutrality applies

to the ITC when it is recommending changes to the HTSUS.  *See supra* note 19; 19

U.S.C. § 3005(d)(1)(C).  Substantial rate neutrality does not factor into this court's

mandate to apply the GRIs to determine the correct classification.  *See N. Am.*

*Processing Co.,* 236 F.3d at 698.

Moreover, had the intention been to cover articles under subheading 9817.95.01

that previously would have qualified as "festive articles" under heading 9505 and the

---

[25] Plaintiff, without elaboration, appears to suggest that Thanksgiving and Christmas are similar to Passover because each involves "a holiday dinner ritual."  Pl.'s Mem. at 16. The fact of dinner, however, is insufficient to rise to the level of a ritualistic celebration. Thanksgiving and Christmas dinners do not involve a particular sequence of events, or even particular foods, unlike Passover, which involves the ordered consumption of six symbolic foods during which "the narrative of the Exodus is recited."  *See* Def.'s Mem. at 12 (citations omitted).

Federal Circuit's interpretation thereof, subheading 9817.95.01 could have been drafted

to more closely parallel subheading 9817.95.05.[26]  *See* Subheading 9817.95.05,

HTSUS (covering "[u]tilitarian items in the form of a three-dimensional representation of

a symbol or motif *clearly associated with a specific holiday* in the United States")

(emphasis added); *Park B. Smith*, 347 F.3d at 927 ("Chapter 95 requires that the article

satisfy two criteria: (1) it must be *closely associated with a festive occasion* and (2) the

article is *used or displayed* principally during that festive occasion.") (citing *Midwest of

Cannon Falls*, 122 F.3d at 1429) (emphasis added).  The plain language of subheading

9817.95.01 requires more than that the article is "closely associated" with a holiday or

that it is "used" in some capacity during the celebrations; rather, subheading 9817.95.01

requires that the article is "used . . . in the *performance of specific . . . cultural ritual

celebrations*."  Accordingly, the court is not persuaded by Plaintiff's appeal to substantial

rate neutrality.

        In sum, the court finds that the dinners associated with Thanksgiving and

Christmas are not "specific . . . cultural ritual celebrations" within the meaning of

subheading 9817.95.01.  Accordingly, the subject imports are not classifiable under

---

[26]The ITC, later, expressly rejected Customs' proposal to amend the HTSUS to replace
subheading 9817.95.05 with proposed subheading 9817.95.02, which would cover
"utilitarian articles 'incorporating a symbol and/or motif that is closely associated with a
festive occasion,'" whether three-dimensional or not. *See Certain Festive Articles:
Recommendations for Modifying the Harmonized Tariff Schedule of the United States*,
USITC Pub. No. 4224, Inv. No. 1205-9 at 3-4, 9-10 (Apr. 2011); *see also id.* App. A
(Customs' Request Letter).  Customs proposed the change on the basis that Note 1(v)
to Chapter 95 had resulted in increased duties on festive utilitarian articles that formerly
would have been entitled to duty free treatment under Chapter 95 pursuant to Federal
Circuit case law.  *See id.* at 3, App. A.

subheading 9817.95.01.  Upon review of Parties' statements of undisputed facts and

supporting exhibits, the court holds that Customs correctly classified the subject imports

according to their constituent materials.

### CONCLUSION

For the foregoing reasons, the court holds that Customs correctly classified the

subject imports.  The court denies Plaintiff's motion for summary judgment and grants

Defendant's cross-motion for summary judgment.  Judgment will be entered

accordingly.


/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: March 1, 2017
          New York, New York